OPINION OF THE COURT
Paul I. Miles, J.
The petitioner was sentenced to imprisonment on a conviction of assault in the second degree on July 21, 1976 in Niagara County Court. The petitioner was transferred to the Albion Correctional Facility at Albion, New York, on June 15, 1977 because the Albion Correctional Facility was closer to his family than the correctional facility within which he was previously held. The petitioner applied for temporary release under article 28 of the Correction Law and the central office denied his application under date of September 12, 1977 in a notice which provided in part "This is to advise you that by direction of Deputy Commissioner Edward Elwin, the application for temporary release of the above-named individual has not been approved. The serious nature of the instant offense, combined with the inmate’s pattern of prior criminality, indicates that he represents a risk to the safety of the community and that there is a substantial likelihood that he shall not *919 succeed on temporary release.” The petitioner received a score of 36 under VERA system of scoring and was again interviewed by the local temporary release committee on March 21, 1978 but was advised that he was disapproved for temporary release because of the central office denial. The petitioner was later rescored and reapplied for temporary release with a VERA score of 37. Under the rules of scoring, a score of 36 made the petitioner eligible for consideration. The petitioner was again interviewed by the local temporary release committee but was advised in writing "Your application for temporary release has been reviewed by the TRC. Your request is denied for the following reason: The serious nature of the present offense, Assault 2° where you in concert, were a party to a shooting and wounding of an individual, causing serious injury, during the commission of a robbery.” The petitioner appealed this decision to the facility temporary release committee which affirmed its decision and an appeal was forwarded to the central office. Under date of October 17, 1978 a notice of results of appeal was sent to the petitioner which stated in part "The results of your appeal are as follows: Your appeal is denied. Your criminal record implies an ongoing disrespect for the laws of the State of New York. For example: In 1973 you were given a conditional discharge for disorderly conduct. Within a year, you were convicted of Criminal Trespass Second, and spent 30 days in the Niagara County Jail. The summer of 1974 you were again convicted of Criminal Trespass and Petit Larceny and you were placed on probation. While on probation, you committed two new crimes. You were sentenced to the Niagara County Jail on one charge, and you received the present sentence for the second charge, which involved the shooting of an innocent victim. In view of all of the foregoing, you obviously failed to learn from your past experience. Therefore, you must be considered as a risk to the safety of the community and, therefore, unsuitable for temporary release.”
The petitioner now is before this court pursuant to CPLR article 78 and contends that the reasons given to him for denial of temporary release were not sufficient and that he has been denied due process. He contends that the reasons given exclusively state past history and do not state anything about his institutional behavior or possible rehabilitative factors. He states that the VERA scoring system takes past history into consideration and such consideration should not *920 again be used as the basis for denial. He contends that the respondents have not used objective standards as set forth in the statute and rules and regulations under article 28 of the Correction Law.
The rationale expressed by this court in the case of People ex rel. Wilson v Hongisto, decided previously, applies to this case. In that decision, this court reiterated that "the rudiments of a procedural due process require an administrative body to detail the reasons for its findings.” (Goldberg v Kelly, 397 US 254.) In that decision as in this, the provisions of subdivision 4 of section 855 of the Correction Law are considered as providing the standards for judging applications for participation in the temporary release program. Those standards are: (1) the safety of the community; (2) the best interests of the rehabilitation of the applicant; and (3) compliance with the rules and regulations of the department.
The difference between this case and the Wilson case is that in this instance the respondents have given reasons, where as in the Wilson case the reasons were practically nonexistent.
In this instance the reasons stated refer exclusively to the history of the crime for which sentence was imposed and the defendant’s activities prior to the commission of that crime. It is evidently the position of the respondent, commissioner, in the statement on the notice of results of appeal that such reasons are sufficient within the statutory frame of things. In fact that notice states in part "Therefore, you must be considered as a risk to the safety of the community”.
It is the contention of the petitioner that he has already been penalized for the conviction of the crime and for his prior activities. Such penalty is evidenced by the severe sentence imposed upon him by the Niagara County Judge. It is also the petitioner’s contention that such prior record was taken into consideration in the VERA scoring system and that in spite of such prior record he received a score which was higher than the minimum or threshold for consideration. It is the contention of the petitioner that something more than this factor must be used and stated as a reason for his nonparticipation in the temporary release program.
It is clearly recognized that the VERA system is merely a means of establishing a certain threshold to be accomplished before an inmate can be considered for temporary release. It does not follow that the same items considered in the thresh *921 old deliberation cannot be additionally considered in the final approval or denial of the temporary release program.
However, the provision of section 855 of the Correction Law previously mentioned indicates that the standards should be considered as a whole and not as alternates. In other words, it would seem that the determiner should consider both the safety of the community and the best interests of the rehabilitation of the applicant in compliance with the rules and regulations of the department. There is no showing from the record that the temporary release committee or the superintendent or the commissioner considered the applicant’s institutional progress or lack of the same. If they did so consider it, that should also have been part of their stated reasons.
If the penal system gives more than lip service to its rehabilitative goals, it would seem necessary that the inmates involved be advised of something more than their conviction and record prior to conviction, when reasons are stated for their denial in the temporary release program. Nothing can change the facts surrounding the applicant’s record up to and including his conviction. It is hoped that the procedures and programs employed in the correctional facilities would lead to rehabilitation. If they are to do so, the applicant’s progress in such procedures and programs should be evaluated and he should be informed as to his progress or lack of the same. Otherwise, he will have no way of knowing whether he is in any way satisfactorily progressing toward rehabilitation into the community to which he most certainly will return.
To the extent that such has not been considered and/or reported in the record, the petitioner’s case is remanded to the respondents for reconsideration and for additional statement as to the reasons supporting their final disposition, based upon the contents of this decision and order.