**Luis VARGAS, Plaintiff,**

v.

**George E. PATAKI, Governor of New York State; Philip Coombe, Acting Commissioner of the Department of Correctional Services; and James F. Recore, Director of Temporary Release Program, Defendants.**

**No. 95–CV–174 TJM.**

United States District Court, N.D. New York.

Oct. 2, 1995.

Luis Vargas, Malone, NY, plaintiff pro se.

Office of the Attorney General of the State of New York, Department of Law, Albany, NY (Mary Ellen Clerkin, Asst. Attorney General, of counsel), for the Government.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

## I. INTRODUCTION

In this *pro se* complaint brought pursuant to 42 U.S.C. § 1983, plaintiff Luis Vargas

("Plaintiff") claims that his constitutional rights were violated when the New York State law governing the Prisoner Work Release Program ("Program") was amended so as to exclude individuals convicted of homicide from program eligibility. Plaintiff has filed suit in this Court to enjoin the State of New York from applying the amended statute retroactively, and seeks that his application for the Program be reinstated.

Presently before this Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the Court agrees with Defendants and hereby grants Defendant's Motion to Dismiss without leave to amend.

## II. BACKGROUND

Plaintiff, who was convicted of manslaughter in the first degree, is presently incarcerated at the Bare Hill Correctional Facility. While his application for participation in the Program was pending, the New York state legislature amended the governing statute so as to render Plaintiff and all other individuals convicted of homicide ineligible to participate. N.Y.Correct.Law § 851.2 (McKinney 1987 & Supp.1995) ("[N]o person under sentence for any homicide offense ... shall be eligible to participate in a work release program").

Plaintiff claims that inmates convicted of homicide offenses who already had begun participating in the Program at the time of the amendment's enactment have been allowed to continue work in the Program. Plaintiff claims this disparate treatment of similarly situated individuals implicates the Equal Protection clause of the Fourteenth Amendment. Moreover, Plaintiff maintains that the disputed statutory amendment, as applied, works retroactively to impose "after-the-fact punishment."

## II. DISCUSSION

### A. MOTION TO DISMISS—LEGAL STANDARD

In general, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim rests upon "the sufficiency of a complaint." *Green v. Maraio*, 722 F.2d 1013,

1016 (2d Cir.1983) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)). When dealing with a *pro se* plaintiff, the Court is obligated "to apply a more flexible standard." *Platsky v. CIA*, 953 F.2d 26, 28 (2d Cir.1991). More specifically, the Court should construe the Complaint liberally, granting a motion to dismiss only where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957)); *Platsky*, 953 F.2d at 28. Here, Defendants argue that even if all the facts stated in the Complaint are true, Plaintiff has failed to state a claim for relief.

### B. EQUAL PROTECTION NOT IMPLICATED

Plaintiff is correct that "[p]rison inmates do not shed all fundamental protections of the Constitution at the prison gates." *Hernandez v. Coughlin*, 18 F.3d 133, 137 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); *see also Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987) ("[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates"). Certainly, the Fourteenth Amendment stands as one of the most cherished of our protections against deprivation of personal liberties; nevertheless, the Court cannot agree with Plaintiff that the statute at issue violates the Constitution.

As a preliminary matter, the Supreme Court has instructed that absent classification "by race, alienage, or national origin, ... legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Thus, strict scrutiny is to be used only where the classification "involves a fundamental right or a suspect class." *Moss v. Clark*, 886 F.2d 686, 689 (4th Cir.1989). Prisoners, however, whether considered as

an aggregate or classified according to offense, "are not a suspect class." *Id.* at 690. Nor is participation in a work release program a fundamental right. *See id.* (finding "no fundamental right to parole or to release from sentence of incarceration"). Consequently, the strict scrutiny standard is inapplicable to the matter at hand, and the Court need "seek only the assurance that the classification at issue bears some fair relationship to a legitimate public purpose." *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1981).

■ Certainly, the legislative enactment at issue bears a rational relationship to the popular desire that, in any work release program, the risk to public safety be minimized. Under a deferential standard of review, then, the Court is not prepared to deem the amended statute violative of Fourteenth Amendment equal protection guarantees.

■ Plaintiff also complains that officials are treating similarly situated individuals (of which he is one) differently. More specifically, Plaintiff complains that prisoners already working in the Program as of the effective date of the amendment have been permitted to continue their participation, even though those prisoners may have been convicted of homicide offenses. The courts, however, generally afford prison officials "full latitude of discretion" to determine inmate classifications. *Isaraphanich v. Coughlin,* 716 F.Supp. 119, 121 (S.D.N.Y.1989) (quoting *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 136, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977)). In short, "prison administrators, when making classifications 'need only demonstrate a rational basis for their distinctions.'" *Id.* (quoting *Smith v. Coughlin,* 748 F.2d 783, 787 (2d Cir.1984)).

■ Under this muted standard, the officials' differential treatment of those approved for the Program prior to the effective date of the amendment does not offend Constitutional concerns. Those prisoners already participating in the Program presumably abide by the many rules and requirements associated with the privilege conferred, thereby quelling express concerns regarding safety. Because it does not appear that "discretion has been abused" by prison officials, *id.* (quoting *Jones,* 433 U.S. at 119, 97 S.Ct. at 2532), the Court, again, finds no Fourteenth Amendment violation.

## C. RETROACTIVE APPLICATION OF THE LAW

■ The *ex post facto* prohibition forbids Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325–26, 18 L.Ed. 356 (1867)) (footnotes omitted); *Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d 966, 971–72 (2d Cir.1985). Participation in a temporary work release program, however, is a privilege, rather than a right. N.Y.Correct.Law § 855.9 (McKinney 1987); *Jandelli v. Coughlin,* —— A.D.2d ——, 629 N.Y.S.2d 303, 304 (3d Dep't 1995); *McCormack v. Posillico,* —— A.D.2d ——, 624 N.Y.S.2d 304, 305 (3d Dep't 1995). Moreover, "[t]he purpose of the amendment is not to increase the punishment for the crime, but to regulate current participation in the temporary work release program." *McCormack,* 624 N.Y.S.2d at 305. Application of the amendment, then, merely removes a privilege, and does not violate the Constitution's *ex post facto* prohibition.

## IV. CONCLUSION

The Court finds that Plaintiff's Complaint fails to state a claim against Defendants. The Second Circuit has cautioned courts not to dismiss a *pro se* complaint pursuant to Fed.R.Civ.P. 12(b)(6) without granting at least one leave to amend when the complaint gives any indication that a valid claim might be stated. *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991) (citation omitted). The Court finds no such indication here. Consequently, the Plaintiff shall not be granted leave to amend.

In consideration of the foregoing, Defendants' Motion to Dismiss pursuant to Fed.

R.Civ.P. 12(b)(6) is hereby GRANTED, and the Complaint is dismissed with prejudice.

**IT IS SO ORDERED.**